IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01878-WYD-MJW

CELESTE C. GRYNBERG,

Plaintiff,

v.

DIRK KEMPTHORNE, et al.,

Defendants.

## RECOMMENDATION ON APPEAL

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Special Order of Reference issued by District Judge Wiley Y. Daniel (docket no. 27) on January 10, 2008.

In this appeal, Plaintiff Celeste C. Grynberg ("Grynberg") contends: (1) that the decision by the Interior Board of Land Appeals ("IBLA") upholding the Bureau of Land Management's ("BLM") cancellation of a lease was not in accordance with law, was arbitrary and capricious, and was not supported by substantial evidence; (2) that the lease was improperly cancelled because the BLM lacked authority to void Grynberg's vested property rights; (3) that the BLM's failure to obtain consent from a surface managing agency [Forest Service] does not allow or require cancellation of the lease; (4) that IBLA's opinion affirming the BLM's decision should be reversed and the lease should be reinstated; and (5) that if the court does not reverse the IBLA opinion

affirming the BLM's decision concerning the lease, then, in the alternative, the court should order that the lease remain in Grynberg's name, should remand this case to the BLM so that the BLM can consult with the surface managing agency [Forest Service], and should require the BLM to make an independent determination of whether to issue the lease.

The court has reviewed the Administrative Record ("AR") (docket no. 17), Appellant Grynberg's Opening Brief (docket no. 19), Defendants' Response Brief (docket no. 20), and Appellant Grynberg's Reply Brief (docket no. 21). In addition, the court has taken judicial notice of the court's file. The court now being fully informed makes the following findings of fact, conclusions of law, and recommendation.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The court finds:

1. That I have jurisdiction over the subject matter and over the parties to this lawsuit pursuant to 28 U.S.C. § 1331, the Administrative Procedure Act ("APA"), 5 U.S.C. § 701-704, and the Mineral Leasing Act, 30 U.S.C. § 181, *et seq.*;

2. That Appellant Celeste C. Grynberg's Complaint for Judicial Review was timely filed on September 19, 2006, within 90 days from the date of the IBLA's June 22, 2006, decision;

3. That Grynberg's appeal is from a final entry of the IBLA's June 22, 2006, decision number 2004-287, affirming the BLM's July 1, 2004, ruling that voided her bid and cancelled the lease that was awarded to her on Parcel No. COC 67344 (the "lease"). That pursuant to 43

C.F.R. §§ 4.1(b)(3) and 4.21(c), the IBLA's decision constitutes a final agency action for purposes of judicial review under the APA, 5 U.S.C. § 704;

4. That venue is proper in the state and District of Colorado;

5. That each party has been given a fair and adequate opportunity to be heard;

6. That in September 2003, Grynberg Petroleum Company nominated the lands at issue here, 617.85 acres in Weld County, Colorado, for inclusion in a competitive oil and gas lease sale. AR 70. BLM responded by letter of September 10, 2003, acknowledging the request, observing that "[i]f your request includes lands located within the National Forest, a copy of your expression of interest and other pertinent information will be forwarded to the appropriate Forest Service office for review, concurrence to lease, and application of stipulations." AR 69;

7. That later, Grynberg submitted a bid for oil and gas parcel number COCG7344 for a competitive oil and gas sale held February 12, 2004. AR 33. As the bid form and the regulations specified, she submitted a payment of $9,888.00, plus $927.00 in advance rent and a $75.00 administrative fee with the bid, for a total of $10,890.00. *Id* at 15. The lease form clearly stated that "[r]ights granted are subject to applicable laws, the terms, conditions and attached stipulations of this lease, [and] the Secretary of the

Interior's regulations and formal orders in effect as of lease issuance . . ." AR 31. BLM's authorized officer signed the lease on June 18, 2004, and the lease had an effective date of July 1, 2004. Subsequently, BLM discovered that it had erroneously included the lease in the February 12, 2004, sale because it had not given the Forest Service, the surface land manager, the opportunity to review the sale and make a determination on whether the lands should be leased or not, as required by regulation. AR 24;

8. That on July 1, 2004, the effective date of the lease, BLM issued a decision stating that the lease was "invalid *ab initio*." AR 28. BLM explained that prior authorization was required from the Forest Service, the agency that manages the surface lands, and that it did not have such authorization. Id. BLM further explained that Grynberg had the right to appeal to the IBLA, and that all monies paid would be refunded at the end of the appeal period. Id.;

9. That Grynberg filed an appeal on July 20, 2004, and IBLA issued its ruling on June 22, 2006. AR. 1 and 25-27. IBLA upheld BLM's decision. IBLA explained that the Mineral Leasing Act for Acquired Lands ("MLAAL") requires BLM to obtain the consent of the surface management agency prior to leasing land and that, until a lease is "properly issued," a potential lessee has no valid claim against the government. AR 4, citing Udall v. Tallman, 380 U.S. 1, 4 (1965); United States v. Wilbur, 283 U.S. 414, 419 (1931); Burglin v.

Morton, 527 F.2d 486, 488 (9th Cir. 1975). IBLA explained that "[t]his is not an instance of a defective offer to lease. Without the United States Forest Service consent, the subject lands were simply not available for leasing." AR 5. However, the IBLA did modify BLM's decision in one respect. BLM had cited and quoted 43 C.F.R. § 3101.7-1(b), which provides that "[p]ublic domain lands shall be leased only after the [BLM] has consulted with the surface managing agency . . . [and] reported its recommendation to lease" or not lease the lands. As IBLA noted, the lands at issue are acquired lands, not public domain lands, and BLM should have cited subparagraph (a) of that same regulation. AR 4;

10. That subparagraph (a) provides that "[a]cquired lands shall be leased only with the consent of the surface managing agency . . . ." 43 C.F.R. § 3101.7-1(a). As IBLA pointed out, "Grynberg was in no way prejudiced by the improper citation." AR 4;

11. That IBLA observed in a footnote:

> Grynberg's disappointment in not receiving the lease is understandable, but the mistake was identified and corrected before the lease became effective. We doubt that Grynberg has been injured by reliance on the issued lease, as the record does not indicate that she (or anyone else) was even notified that the lease had been executed before BLM issued its decision determining that the lease was invalid. AR 6;

12. That IBLA also held that it is "well-established that the Secretary of the Interior has the authority to cancel any oil and gas lease issued contrary to law because of the inadvertence of his subordinated, including administrative errors committed prior to lease issuance." AR 6, citing 43 C.F.R. § 3108.3(d), Boesche v. Udall, 373 U.S. 472, 478-79 (1963); Clayton W. Williams, Jr., 103 IBLA 192, 202 (1988). Accordingly, the IBLA affirmed BLM's decision as modified. AR 6;

13. That Grynberg does not dispute that BLM was required to obtain the consent of the Forest Service, which manages the surface lands, prior to leasing. AR 3, Plf. Br. at 12. Grynberg also does not dispute that BLM did not obtain such consent or that it had an obligation to do so. Id.;

14. That the APA requires the reviewing court to defer "to the decisions of the [IBLA], and [that it] set aside an IBLA decision only if it is arbitrary, capricious, otherwise not in accordance with law, or not supported by substantial evidence." IMC Kalium Carlsbad, Inc. v. Interior Bd. of Land Appeals, 206 F.3d 1003, 1009 (10th Cir. 2000). "The IBLA has de novo review authority over BLM decisions." Id. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pennaco Energy, Inc. v. United States Dept. of Interior, 377 F.3d 1147, 1156 (10th Cir. 2004);

15. That per the MLAAL, the Secretary of the Department of Interior

has the authority to lease deposits of coal, phosphate, oil, oil shale, gilsonite, gas, sodium, potassium, and sulphur on federal land. 30 U.S.C. § 352. The MLAAL specifically provides that such lands are to be leased by the Secretary "under the same conditions as contained in the leasing provisions of the mineral leasing laws, subject to the provisions hereof." 30 U.S.C. § 352. When lands are available for leasing, a potential lessee may nominate the lands for competitive bid. See 43 C.F.R. § 3120.3-1. The lease is awarded to the highest responsible qualified bidder, and the winning bidder is required to submit, on the day of sale for the parcel, a minimum bid of $2.00 per acre and the total amount of the first year's rental. See 43 C.F.R. §§ 3120.5-2(b), 3120.5-3(b). In addition, the MLAAL states that "[n]o mineral deposit covered by this section shall be leased except with the consent of the head of the executive department . . . having jurisdiction over the lands containing such deposit . . . ." 30 U.S.C. § 352. Also, the applicable regulations state that "[a]cquired lands shall be leased only with consent of the surface managing agency . . . ," which in this case is the Forest Service. See 43 C.F.R. § 3101.7-1(a). The regulations further provide that "[a]ll competitive leases shall be considered issued when signed by the authorized officer." 43 C.F.R. § 3120.2-2. Lastly, the regulations clearly state: **"Leases shall be subject to cancellation if improperly issued."** 43 C.F.R. § 3108.3(d)

(emphasis added);

16. That Grynberg admits that the BLM's failure to obtain consent from the Forest Service before issuing the lease was an "error" and not affirmative misconduct. See Plf. Br. at 12.;

17. That in Boesche v. Udall, 373 U.S. 472, 476 (1963), the Supreme Court confirmed that the Secretary's "general powers of management over the public lands" gives him "authority to cancel [a] lease administratively for invalidity at its inception.";

18. That the IBLA relied upon Boesche, Clayton W. Williams, Jr., 103 IBLA 192, 202, 95 I.D. 102, 107 (1988), and High Plains Petroleum Corp., 125 IBLA 24, 26 (1992), when it affirmed the BLM's decision to cancel the lease. AR 6;

19. That the lease was properly canceled based upon the holdings in Boesche, Clayton W. Williams, Jr., and High Plains Petroleum Corp. and based upon 43 C.F.R. § 3108.3(d);

20. That the IBLA opinion affirming the BLM's decision to cancel the lease was not arbitrary or capricious and was in accordance with the applicable law as stated above.

## RECOMMENDATION

**WHEREFORE,** based upon these findings of fact and conclusions of law, this court **RECOMMENDS**:

1. That the IBLA opinion affirming the BLM's decision to cancel the

lease be **AFFIRMED**;

2. That this case (appeal) be dismissed;

3. That each party shall pay their own attorney fees and costs for this appeal.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service to serve and file written, specific objections to the above recommendations with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written specific objections WILL PRECLUDE the party from a *de novo* determination by the District Judge, United States v. Raddatz, 447 U.S. 667, 676-83 (1980), and also WILL PRECLUDE appellate review of both factual and legal questions, Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Done this 20th day of May 2008.

                                          BY THE COURT

                                          s/ Michael J. Watanabe
                                          MICHAEL J. WATANABE
                                          U.S. MAGISTRATE JUDGE